Case 2:08-cv-05592-DRD-MAS   Document 133   Filed 04/18/12   Page 1 of 14 PageID: 2658

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANDANA, LLC, | |
| Plaintiff, | Civ. No. 08-5592 (DRD) |
| v. | **O P I N I O N** |
| MBC FZ-LLC d/b/a MBC Group a/k/a Middle East Broadcasting Services, | |
| Defendant. | |

*Appearances by:*

HARTMANN DOHERTY ROSA BERMAN & BULBULIA, LLC
Paul S. Doherty, III, Esq.
65 Route 4 East
River Edge, NJ 07661

    *Attorneys for Plaintiff*

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
by:    John M. Agnello, Esq.
         Melissa E. Flax, Esq.
         Eric Magnelli, Esq.
5 Becker Farm Road
Roseland, New Jersey 07068

    *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This matter comes before the Court by way of a motion to vacate a final judgment by Plaintiff Dandana, LLC ("Dandana"), on the grounds of alleged newly discovered evidence and purported related misconduct.[1] Having discovered the claimed newly discovered evidence to be fraudulent, as reiterated in the opposition brief filed by Defendant MBC FZ-LLC ("MBC"), the motion has been withdrawn. Currently before the Court is a request by MBC for related attorneys' fees, costs, and expenses.

For the reasons set forth below, Dandana's Motion to Vacate is dismissed as moot due to the withdrawal, and MBC's related request for an award of attorneys' fees, costs, and expenses is DENIED.

## I. BACKGROUND

Dandana is a limited liability company located in Rochelle Park, New Jersey and founded in 2004 by Amro Al Tahwi ("Al Tahwi"), who serves as the Chief Executive Officer. (Declaration of Melissa E. Flax in Support of Defendant's Motion for Summary Judgment ("Flax Decl."), Ex. 6 at 31:19-33:13, Doc. No. 101-1.) Dandana is a television network and content distributor that also acts as an agent between producers of English and Arabic language television stations and cable and satellite broadcasters in North America. (Id. at 29:14-31:5.) Dandana both acquires ownership of entire television stations for long term broadcast distribution and purchases the rebroadcast rights to television stations for resale to cable and satellite providers. (Id.) Dandana also acts as an advertising agency, selling ad space on its own channels and on the channels it acquires for redistribution. (Id.)

---

[1] The final judgment dismissing the case against Dandana with prejudice is currently on appeal in the Court of Appeals.

MBC is a limited liability company formed under the laws of Dubai Media City, Dubai, United Arab Emirates. (Flax Decl., Ex. 1 at ¶ 4, Doc. 101-1.) MBC owns MBC International ("MBC1") an Arabic language television channel dedicated to audiences in the United States, Canada and Australia. MBC also owns the Al Arabiya News Channel ("Al Arabiya"), a 24-hour seven day a week Arabic television news service in the Middle East and North African region that MBC licenses for broadcast in other parts of the world. (Flax Decl., Ex. 2 at ¶¶ 5-6, Doc. 101-1.)

A series of exchanges between Al Tahwi and Mohammed Al Windawee ("Al Windawee"), Head of Distribution for MBC, took place regarding a deal for Dandana to negotiate the redistribution of MBC1 and Al Arabiya in North America. (Flax Decl., Ex. 6 at 163:4-22, Ex. 18, Doc. No. 101-1.) A detailed factual outline regarding the agreement between the parties is available in a November 10, 2011 Opinion by the Court. (Opinion, Doc. No. 115.) Therein, the Court granted MBC's Motion for Summary Judgment and dismissed Dandana's Complaint holding that there were no issues of material fact and that as a matter of law: (1) there was not an enforceable agreement made between the parties on July 27, 2007 and (2) that even if the parties had entered into a contract on July 27, 2007, a subsequent, unambiguous fully-integrated written contract between the parties concerning the same subject matter prohibited recourse to prior oral representations. (Id.) The Court also denied Dandana's Motion to Strike MBC's Expert Report as Moot. (Id.)

Of relevance to the current matter, in Dandana's Motion to Strike MBC's Expert Report, Dandana raised a number of concerns regarding the reliability of MBC's forensic computer expert and the methods he had employed in conducting electronic discovery in the case. (Pl.'s Motion to Strike, Doc. No. 96.) In particular, Dandana argued that MBC was non-compliant

with the Court's Electronic Protocol Order ("EEPO") (Doc. No. 71.)  In a July 5, 2011 report, Dandana's forensic computer expert, Seraphin Konan, stated that:  the LG model laptop computer belonging to Al Windawee had its data manipulated and was not the laptop utilized by Al Windawee during the relevant time period of the case; that he had not been allowed direct access to Al Windawee's email on the Microsoft Exchange Server; and that he was not given direct access to the back-up Vault email system.  (Certification of Robert Fonticoba in Support of Plaintiff's Motion to Exclude Testimony ("Fonticoba Cert."), Ex. B, Doc. 96-2.)  Additional testimony was also submitted regarding lack of access to a desktop PC and laptop that Al Windawee used.  (Id.; Certification of Paul S. Doherty in Support of Motion to Vacate ("Doherty Cert."), Ex. D at 132:10-133:2, Doc. 127-1.)  The additional facts below are laid out to the extent germane to the current proceeding.

In early December 2011, Dandana substituted its present counsel for its former counsel.  (Doherty Cert. at ¶ 2.)  On December 6, 2011, Dandana filed a Notice of Appeal from the Final Judgment entered in favor of MBC.  (Doc. No. 123.)  That same day, Al Tahwi received an email from an individual named Ali Saed, with a PDF document entitled "Witness Statements" attached.[2]  (Doherty Cert., Ex. A.) Therein, Ali Saed states that:

- Ali Saed was a former "accountant" at MBC, employed at MBC from 2005 to 2011.

- Ali Saed has "intimate knowledge" as a "senior employee" for MBC of the issues in the case before this Court and has been consulted about the case in his "professional" capacity by others at MBC.

---

[2] The email was sent from formerlymbcfzl.l.c@hushmail.com, and signature line provides that the sender is Ali Saed, of "1244 Donald Street Ottawa Ontario Klj 8r7 Canada", formerlyitcltdindia@hushmail.com, +16136006584.  (Doherty Cert., Ex. A.)

4

- It is Ali Saed's "belief" that MBC representatives engaged in improper conduct during the case, including withholding crucial documents, providing false testimony, etc.
- Ali Saed has records in a bank safe deposit box in Dubai regarding the alleged improper conduct of MBC representatives and that he is "more than willing to provide [sic] without financial compensation".

(Id.)

In an effort to verify the contents of the email and gather additional information, counsel for Dandana spoke by phone with Ali Saed. (Id. at ¶ 3). During the conversation, Ali Saed reiterated his claim that MBC's senior executives, Al Windawee and Barnett, provided false testimony, withheld critical documents and internal memos, and destroyed documents in an effort to defeat Dandana's claims in this case. (Doherty Cert. at ¶ 3).

Subsequent to receipt of the email, counsel for Dandana conducted a Google search to attempt to find information related to Ali Saed, including a search with his personal address, and a search for a potential link to MBC, however no relevant information resulted. (Smith Certification in Support of Plaintiff's Reply Brief ("Smith Cert.") at ¶¶ 2-7; Doherty Certification in Support of Plaintiff's Reply Brief ("Doherty Cert., Apr. 9, 2012") at ¶ 6.)

Following this telephone conversation, counsel for Dandana emailed Ali Saed, requesting an "outline of the contents of the withheld documents and a summary of the false testimony". (Id. at ¶ 4, Ex. B.) Ali Saed responded via email on December 7, 2012 setting forth a "*partial narrative summery* [sic]" regarding his knowledge of MBC's unlawful spoliation of evidence, setting forth a list of subject-specific inter- and intra-office email communications. (Id. at ¶ 5, Ex. C.) Thereafter, Al Tahwi traveled to Canada and met with Ali Saed in person on December

11, 2011.  (Declaration of Al Tahwi in Support of Plaintiff's Motion to Vacate ("Al Tahwi Decl.") at ¶ 8.)  Ali Saed informed Al Tahwi that:

- He (Ali Saed) was a close friend of the head of MBC's Information Technology ("IT") department.
- He (Ali Saed) received documents from the head of MBC's IT department that were relevant to the case and not produced by MBC in discovery.

(Id. at ¶¶ 7, 8.)

These statements only appear in Al Tahwi's Declaration, and are not contained in Ali Saed's December 6, 2011 "Witness Statements," nor in Ali Saed's December 7, 2011 "confidential *partial* narrative summery [sic] of evidence" email.

The following day, December 12, 2011, Al Tahwi accompanied Ali Saed to a Canadian attorney and notary, where Ali Saed produced a valid Canadian license and credit card as identification, and signed the Affidavit describing the details of his knowledge of MBC's actions and misconduct in this case.  (Al Tahwi Decl. at ¶¶ 9-10.)

In his Affidavit, Ali Saed declares that he was employed as an accountant for MBC in Dubai from 2005 to 2011 and that he currently resides in Ottawa, Canada.  (Affidavit of Ali Saed in Support of Plaintiff's Motion to Vacate ("Saed Aff.") at ¶ 1.)  He states that he read an email from Barnett, Chief Operating Officer and General Manager of MBC (Flax Decl., Ex. 2 at ¶ 2, Doc. 101-2), instructing MBC's IT department to retrieve and sanitize MBC's confidential computerized records regarding Dandana and its principal, Al Tahwi. (Saed Aff. at ¶ 4.)  Ali Saed further asserts that MBC did not produce certain files containing documents regarding the contract between Dandana and MBC which were marked "confidential/not for release" including internal emails and documents regarding the July 27, 2007 contract between Dandana and MBC

6

and MBC's negotiation strategy with Dandana. (Id. at ¶ 5.) Ali Saed states that he retained copies of certain of the "confidential" documents withheld in discovery and is currently storing them in a safe deposit box in Dubai. (Id. at ¶ 7.) Accordingly, Al Tahwi agreed to pay for Ali Saed to travel to Dubai from December 28, 2011 to January 6, 2012 to retrieve these documents. (Doherty Cert. at ¶7.) To the best of Dandana's knowledge, Ali Saed did travel to Dubai, however did not return with MBC's "confidential" documents and ceased communications with Dandana. (Id. at ¶ 8.)

On February 23, 2012, Dandana filed its Motion for Relief pursuant to Rule 60(b)(2) on the basis of the newly discovered evidence described in the Affidavit of Ali Saed indicating that MBC improperly withheld relevant and important evidence, and pursuant to Rule 60(b) (3) and (6) due to fraud, misrepresentation or other misconduct of MBC in withholding such evidence and failing to comply with the EEPO. (Pl.'s Br. in Support of Motion to Vacate at 10.)

On March 19, 2012, MBC filed its opposition informing that Ali Saed never worked for MBC. (See Declarations in Support of Def.'s Opposition Br. of Klaus Felsinger, Chief Financial Officer of MBC ("Felsinger Decl."); Nawal Attamimy, Group Financial Controller for MBC ("Attamimy Decl."); Najwa Safwat, Director of Human Resources for MBC ("Safwat Decl."); John Whitehead, Group Director, Legal & Corporate Affairs for MBC ("Whitehead Decl.")). Moreover, MBC discovered that Ali Saed perpetrated a similar scam on a Bankruptcy Trustee in a judicial proceeding in Dubai entitled *Trustee in Bankruptcy and Liquidator of Cash Plus Limited and Receiver of Cash Plus' Subsidiaries and Affiliates v. Carlos Hill, Bertram Hill, Hill Group Limited and Bank Julius Baer (Middle East) Limited*, Claim No. 024/2009, The Judicial Authority of the Dubai International Finance Centre ("DIFC Court"). As reported in the DIFC

7

Court's decision, on July 7, 2009, the Bankruptcy Trustee received an unsolicited email from "Ali Saed" stating, among other things, that:

- Ali Saed was a former employee of Bank Julius Baer (Middle East) Ltd. In Dubai ("Julius Baer") from 2003 to 2009; and
- Individuals and entities from whom the Bankruptcy Trustee sought to recover assets maintained bank accounts totaling $25,000,000 (USD) at Julius Baer.[3]

Following his receipt of the July 7, 2009 email, the Bankruptcy Trustee contacted Ali Saed by phone. In the call, Ali Saed reiterated that he was a former employee of Julius Baer and that his services at Julius Baer were terminated for undisclosed reasons. Ali Saed also divulged that he had personal knowledge of the existence of the bank accounts, and that the accounts contained up to $25,000,000 (USD), and that Ali Saed had proof of the existence of the bank accounts in a safe deposit box in Dubai. (Magnelli Decl., Ex. A at 4-5.) During the same telephone conversation, Ali Saed agreed to assist the Bankruptcy Trustee to obtain proof of the existence of the bank accounts by traveling to Dubai and retrieving the necessary documentation. (Id.) At Ali Saed's request, the Bankruptcy Trustee purchased an airline ticket for Ali Saed to travel to Dubai from Canada, on the understanding that Ali Saed would travel back from Dubai to Jamaica and provide the critical bank account information to the Bankruptcy Trustee. (Id.)

Subsequent to their telephone conversation on July 7, 2009, the Bankruptcy Trustee purchased an airline ticket for Ali Saed to travel to Dubai on July 24, 2009 and then to travel to Jamaica with the critical bank account information. The travel agent that the Bankruptcy Trustee used to arrange for the trip subsequently advised the Bankruptcy Trustee that Ali Saed had

---

[3] The July 7, 2009 email to the Bankruptcy Trustee was marked "Confidential" and listed Ali Saed's mailing address as 2400 Donald Street, Ottawa, Ontario K1J8R7, Canada, and his email address as formerlybankjuliusbaermiddleeast@yahoo.com. (Declaration of Eric Magnelli in Support of Def.'s Opposition Br. ("Magnelli Decl."), Ex. A at 3-4.)

missed his return flight from Dubai. (Id.) Following procurement of the airline ticket for Ali Saed, the Bankruptcy Trustee had no further communications from Ali Saed, and the critical bank account information previously described by Ali Saed had never been provided. (Id.)

Finding in favor of Julius Baer, and dismissing Julius Baer from the Bankruptcy case, Justice Sir Anthony Colman noted, among other things, that:

- Julius Baer's account of its business activities is true and that the information contained in Ali Saed's July 7, 2009 email was "bogus".

- In all likelihood, Ali Saed sought to persuade the Trustee to entrust him to obtain information in Dubai in order to perpetrate a fraud on the Bankruptcy Trustee for the purpose of obtaining an airline ticket from Canada to Dubai.

- The absence of any subsequent contact by Ali Saed with the Bankruptcy Trustee leads to the conclusion that Ali Saed had no intention to travel to Jamaica much less to provide the Bankruptcy Trustee with any information about bank accounts.

- The Bankruptcy Trustee was wrong to take the July 7, 2009 email from Ali Saed as true and should have investigated its accuracy and reliability.

- While the Bankruptcy Trustee might have believed that the July 7, 2009 email contained accurate information, the Bankruptcy Trustee was put on inquiry as to the reliability of that information by the circumstances in which Ali Saed provided that information (i.e., an unsolicited email from a stranger claiming to have relevant information) who then disappeared with the benefit of an airline ticket to Dubai. The DIFC Court also noted that these events should have put on "bright red lights" for the Bankruptcy Trustee and those advising him.

(Magnelli Decl., Ex. A at 5-6.)

The DIFC Court awarded costs in favor of Julius Baer based on, among other things, the Bankruptcy Trustee's failure to conduct any reasonable due diligence regarding who Ali Saed was and the accuracy of his statements. (Id. at 6-7.)

MBC argues in its opposition papers that there being no newly discovered evidence, relief pursuant to Rule 60(b) is unfounded. Moreover, MBC notes that minimal due diligence, by way of three basic Google internet searches, revealed Ali Saed to be a swindler based on his behavior in the Dubai proceeding. (Def.'s Opp. Br. at 17.) MBC further lists a number of items which "should have set off 'bells and whistles'" with Dandana and its counsel as they proceeded with communications, meetings, and dealings with Ali Saed and indicate that the Rule 60(b) motion should not have been filed:

- Ali Saed contacted Al Tahwi via an unsolicited December 6, 2011 email.
- At the top of the December 6, 2011 email, Ali Saed listed his email address as formerlymbcfzl.l.c.@hushmail.com
- At the bottom of the same December 6, 2011 email, Ali Saed listed his email address as formerlyitdltd.india@hushmail.com
- Ali Saed could not produce even one of the handful of "critical documents" that he claimed he possessed without going to Dubai.
- Ali Saed requested his airfare to be paid to Dubai even though in his "Witness Statements" he stated "I am more than willing to provide [the critical documents] without any financial compensation."
- Ali Saed ceased communications with Al Tahwi and his attorney after he obtained the airline ticket to Dubai.
- Ali Saed never produced any "critical documents."

10

(Id. at 27). MBC accompanies its opposition brief with a request for an award of attorneys' fees, expenses and costs. (Id. at 26.)

At no time prior to filing of its opposition brief, did MBC or its counsel communicate with Dandana or Dandana's counsel regarding the information uncovered about the similar fraud Ali Saed had perpetrated on a bankruptcy trustee in a case in Dubai in order to allow Plaintiff to voluntarily withdraw its motion. Nor did MBC or its counsel communicate that it intended to seek sanctions against Dandana and its counsel. (Doherty Cert., Apr. 9, 2012, at ¶ 7.)

On April 9, 2012, Dandana filed a reply brief which contends that it was only made clear by the evidence elicited in MBC's opposition brief that Dandana had been victim of a fraud by Ali Saed. (Pl.'s Reply Br. at 5.) In light of this evidence, Dandana appropriately withdrew its Rule 60(b) Motion. With regard to MBC's request for attorneys' fees, expenses, and costs, Dandana asserts that had MBC communicated the parallel misconduct in Dubai, it would simply have withdrawn the motion earlier, thereby circumventing the need for MBC to expend additional resources in furtherance of the motion. (Id. at 11.) Thus, Dandana contends that MBC's request for attorneys' fees, expenses, and costs were avoidable and unwarranted due to lack of requisite bad faith. (Id. at 10-11.)

## II. DISCUSSION

### A. Scant evidence in support of Dandana's Rule 60(b) Motion

First, the Court duly notes the scant evidence submitted by Dandana and its counsel in support of its now withdrawn Rule 60(b) Motion. It is regrettable that Dandana submitted the motion despite the fact that approximately two months passed since its last correspondence with Ali Saed, after which communication with him halted and he failed to deliver the purported "confidential" documents. Despite the *at best* questionably reliable evidence, Dandana

11

submitted a motion to vacate, in sole reliance on Ali Saed's unsupported Affidavit. Dandana now having withdrawn the Rule 60(b) Motion, the Court turns its attention to the remaining matter of MBC's request for attorney's fees, costs, and expenses.

### B.  MBC's Request for Attorney's Fees, Costs, and Expenses

Pursuant to 28 U.S.C. 1927 (Counsel's liability for excessive costs):

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"As evidence from the text of the statute, § 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceedings; and (4) doing so in bad faith or by intentional misconduct." Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 278 F.3d 175, 188 (3d Cir. 2002). "[B]efore a court can order the imposition of attorney's fees under § 1927, it must find *willful* bad faith on the part of the offending attorney." Id. at 297 (quoting Williams v. Giant Eagle Markets, Inc., 883 F.2d 1184, 1191 (3d Cir. 1989) (emphasis added)). See also Hackman v. Valley Fair, 932 F.2d 239, 242 (3d Cir. 1991) ("To justify the imposition of excess costs of litigation upon an attorney his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes." ). "This bad faith requirement is seen necessary to avoid chilling an attorney's legitimate ethical obligation to represent his client zealously[.]" Baker Indus. v. Cerberus Ltd., 764 F.2d 204, 208 (3d Cir. 1985). Last, the court must keep in mind that "misunderstanding, bad judgment, or well-intentioned zeal" are not

sufficient reasons for applying such sanctions.  LaSalle Nat'l Bank v. First Comm. Holding Group, LLC, 287 F.3d 279, 288 (3d Cir. 2002).

"Bad faith is a factual determination reviewable under a clearly erroneous standard. Once a finding of bad faith has been made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." Hackman v. Valley Fair, 932 F.2d at 242.  "[T]he power to assess costs on an attorney in a given case is a power which 'courts should exercise only in instances of a serious and studied disregard for the orderly process of justice.'" Ford v. Temple Hospital, 790 F.3d 342, 347 (3d Cir. 1986) (internal citations omitted).

Here, MBC seeks sanctions because the arising incidents "should have set off 'bells and whistles' with Plaintiff and its counsel as they proceeded with their communications, meetings and dealings with Ali Saed." (Def.'s Opp. Br. at 26-27.)  See also listed items *supra* at 10. Moreover, MBC asserts that a simple Google search could have revealed Ali Saed's past misconduct in a bankruptcy court case pending in Dubai.  Taking all items into consideration, MBC argues that "Plaintiff should never have filed its frivolous Rule 60(b) motion in which it vexatiously accuses MBC of fraud, perjury, spoliation, etc." (Def.'s Opp. Br. at 28.)

A finding of bad faith cannot be premised on opposing counsel's inability to find one court's judgment in Dubai regarding the con-artist implicated herein.  The Court is not persuaded by MBC's "Google-Search" argument.  As Dandana points out, "[i]t is well known that Google's search capabilities are not static but rather are based on constantly changing algorithms influenced by such individualized factors such as the searcher's personalized web browsing history and the recent searches just conducted." (Pl.'s Reply Br. at 9.)

Nor can bad faith be found based on the employ of bad judgment by opposing party and its counsel, as evident here.  Additionally, counsel for MBC could have simply alerted opposing

13

counsel to this significant finding of parallel fraud in a Dubai court, thereby foregoing its incurred expenses for which it now seeks compensation.  Although Dandana acted too hastily in filing its Motion to Vacate without further substantiation of evidence before it, the Court finds that Section 1927 sanctions are not warranted because the conduct at issue herein does not rise to the level of willful bad faith.

### III.  CONCLUSION

For the aforementioned reasons, MBC's request for attorney's fees, expenses, and costs is DENIED.  Dandana's Motion to Vacate is further dismissed as moot.


    /s/ Dickinson R. Debevoise
    DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: April 18, 2012